UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GENERAL SECURITY, INC.,

                              Plaintiff,                               **ORDER**
                                                                                   CV 17-1194 (DRH) (AYS)

                          -against-

COMMERCIAL FIRE & SECURITY, INC.;
WAYNE WAHRSAGER; STEVEN MORAN;
JOHN DOES 1-10.

                              Defendant.
----------------------------------------------------------X
**ANNE Y. SHIELDS, Magistrate Judge:**

      Plaintiff General Security, Inc. ("Plaintiff" or "General") and Defendants are business competitors engaged in the business of security system installation, service and monitoring. Plaintiff alleges that Defendants improperly obtained, maintained and/or utilized Plaintiff's confidential business information in violation of Federal and State law.

      Presently before this Court is Plaintiff's motion to disqualify Defense counsel. Specifically, Plaintiff seeks to disqualify the law firm of Kirschenbaum & Kirschenbaum (the "Kirschenbaum Firm") on the ground that attorney Dennis Stern ("Stern"), a lawyer who is "of counsel" to the Kirschenbaum Firm, cannot ethically represent Defendants in this action. For the reasons set forth below, the motion is denied.

BACKGROUND

I.      <u>The Parties</u>

      As noted, General is a company that provides security system installation, servicing, and monitoring. Defendants are General's business competitors Commercial Fire & Security, Inc. ("Commercial"), and individual Defendants Wayne Wahrsager ("Wahrsager") and Steven Moran

1

("Moran").[1] DE 13 ¶ 10. Wahrsager has been employed by Commercial as its Executive Director of Operations since 2011. Id. ¶ 11. Moran formerly worked as a salesperson for General, and is now employed as a salesperson for Commercial. Id. ¶¶ 16-17. Plaintiff alleges, inter alia, that Commercial authorized Wahrsager to solicit customers and/or attempted to sell Commercial's services to potential customers in violation of law. Id. ¶ 19.

II. Defendant Wahrsager and Litigation Involving New York Merchants Protective Co., Inc.

Prior to the commencement of this action, General purchased customer accounts and related contracts from a now-defunct company engaged in the same business as the parties herein. That company was known as New York Merchants Protective Co., Inc. ("NYMP"). Because the conflict alleged in support of the present motion is related to the conduct of Wahrsager in connection with the disposition of the assets of NYMP, the Court discusses briefly the facts as to that transaction and relevant prior litigation.

In or around 2010, Wahrsager was an owner and Chief Executive Officer of NYMP. In those capacities, he signed a personal guarantee on a revolving nineteen million dollar loan (the "Loan") extended by Bank of America ("BOA") to NYMP. NYMP executed a promissory note in connection with the Loan. When NYMP failed to make required payments, BOA commenced two separate actions which were ultimately ruled upon before the District Court in this matter. First, in 2010, BOA commenced an action against Wahrsager and another individual to collect on their personal guarantees. That case was commenced in the United States District Court for the Northern District of Illinois, and, in 2011, was transferred to this District. See DE 1 filed in Docket No. CV 11-2044 (E.D.N.Y. 2011) (DRH). In March of 2013, summary judgment was

---

[1] Plaintiff also names as Defendants John Does 1-10. These individuals are alleged to be currently unknown salespersons of Commercial who are alleged to have improperly solicited General's customers. DE 13 ¶ 20.

granted to BOA in its case against Wahrsager on his personal guarantee, and judgment was entered against him in an amount in excess of $24 million.

During the same time period that BOA was litigating the action against Wahrsager as to his personal guarantee on the Loan, BOA commenced an action in this District naming NYMP as liable on its promissory note. See CV 11-38 (E.D.N.Y.) (DRH) (the NYMP Action").[2] In the NYMP Action, BOA sought, inter alia, appointment of a receiver to take possession of, and to operate NYMP. Wahrsager opposed the receiver's request to terminate Wahrsager's employment with NYMP. See CV11-38, DE 29-2. On May 2, 2011, the District Court held a hearing, and upheld the receiver's right to terminate Wahrsager, and to direct that he vacate the NYMP premises. CV 11-38, DE 40.

In July of 2011, the receiver in the NYMP Action sought permission to transfer the assets of NYMP to an entity known as Professional Security Technologies, LLC. CV11-38, DE 69. The amount of the proposed sale was substantially lower than the amount owed to BOA under the Loan. See DE 69 at ¶10. The receiver's proposed sale was opposed by NYMP's former landlord, who was represented by the law firm sought to be disqualified in this matter. See CV 11-38 DE 70. Warhsager also opposed the sale. See CV 11-38, DE 75-91 (Order to Show Cause dated July 18, 2011 and documents related thereto). Despite the objections filed, the District Court authorized the receiver's proposed sale of NYMP's accounts and propriety information to the entity that ultimately sold such assets to General, as described below, in 2016. CV 11-38, DE 155.

III.     The 2016 Sale of the Prior Assets of NYMP to General

---

[2] The NYMP Action was originally assigned to the Honorable Denis R. Hurley. That action has since been assigned to the Honorable Joan M. Azrack, before whom it remains pending. See CV 11-38, Order dated January 15, 2015.

On or about November 1, 2016, an asset purchase agreement was entered into that effectuated the sale of the aforementioned business information of NYMP to General (the "2016 Asset Purchase Agreement"). See DE 13 ¶ 28. The parties to the 2016 Asset Purchase Agreement were a corporate entity representing General (referred to hereinafter as "General") as purchaser, and NYMP Acquisition LLC and Professional Security Broadband, Inc., (the parent company of the owner of the assets being transferred) as sellers (referred to hereinafter as the "Seller" or "NYMP"). Under the 2016 Asset Purchase Agreement, General purchased, inter alia, customer accounts and related contracts that were previously owned by NYMP, as well as the exclusive right to use the trade name "New York Merchants Protective Company" and telephone numbers used by NYMP for customer service. DE 13 ¶ 29. Under the 2016 Asset Purchase Agreement, it was represented that the Seller had the full right and authority, as sole owner, to sell and convey the NYMP assets to General. DE 13 ¶ 31.

IV.     The Indemnification Agreement

The 2016 Asset Purchase Agreement was executed along with an indemnification agreement referring to the possible conduct of, inter alia, Wahrsager (the "Indemnification Agreement"). DE 16, Exh. 2. That agreement indemnifies and holds harmless General from any losses stemming from any claim by Wahrsager (or others named) that calls into question the Seller's right to convey the NYMP business information purchased by General under the terms of the 2016 Asset Purchase Agreement. Plaintiff alleges that the Indemnification Agreement was drafted during negotiation of the 2016 Asset Purchase Agreement to assuage General's concerns that Wahrsager would somehow claim an interest in the business information that General was purchasing. Indeed, the Indemnification Agreement states, in particular, that it is entered into in order to give the purchaser "the additional comfort it seeks," as to possible claims. DE 16, Exh.2

at 1-2. It is likely that such concerns arose from General's knowledge of Wahrsager's prior business relationship with NYMP, and his objections raised in connection with virtually every act taken by the Receiver over the course of litigation in the NYMP Action.

The Indemnification Agreement was drafted by attorney Dennis Stern, a lawyer who, as noted, is of counsel to the law firm representing Defendants (including Wahrsager) in this matter. Stern, as counsel for the Seller in negotiations leading to execution of the 2016 Asset Purchase Agreement, is alleged (not surprisingly) to have been informed of General's concerns about Wahrsager, and to have drafted the Indemnification Agreement in response thereto. While Plaintiff claims that the terms of the Indemnification Agreement are not routine (because the agreement particularly names, inter alia, Wahrsager), it contains usual terms of indemnification, assuring that General be held harmless as to any losses liability or damage arising out of or resulting from any claim by NYMP or Warshager as to the seller's rights, title and interest to the assets conveyed. See DE 16, Exh. 2 ¶ 2; Exh. 3 ¶ 7.

V.      General's Business Interference Allegations

General's amended complaint in this action alleges that shortly after entering into the 2016 Asset Purchase Agreement, it began to learn of unusual customer contract cancellations and communications. DE 13 ¶ 48. Plaintiff specifically names multiple customers who cancelled their contracts after being solicited by Defendants. DE 13 ¶¶ 50-106. Plaintiff alleges that Defendants have targeted Plaintiff and have caused, and continue to cause, Plaintiff to suffer irreparable harm and injury and economic damages. DE 13 ¶ 147.

VI.     The Present Motion to Disqualify

    A.      Plaintiff's Position

Plaintiff moves to disqualify the Kirschenbaum Firm. That firm represents all Defendants in the present litigation, including Wahrsager. Stern, the attorney who is stated to be the source of the alleged conflict, is of counsel to Kirschenbaum. Plaintiff acknowledges that Kirschenbaum does "not have a traditional attorney-client relationship with both parties," DE 17 at 7, but argues that disqualification is nevertheless appropriate.

According to Plaintiff, the conflict requiring disqualification arises from attorney Stern's representation of the Seller in connection with the 2016 Asset Purchase Agreement, and his negotiation and drafting of the Indemnification Agreement. Plaintiff argues that Stern's negotiation and drafting of the latter agreement (which contemplates indemnifying Plaintiff against the very harm incurred in this matter) requires Stern to be a witness in this case, making it unethical for a firm with which he is associated on an "of counsel" basis to represent Defendants herein. DE 17 at 9-12. More specifically, Plaintiff argues that Stern will testify here as to issues that are adverse to NYMP, his client on the 2016 Asset Purchase Agreement. Plaintiff argues that a conflict arises because Stern's prior representation requires that he argue in favor of a narrow interpretation of the Indemnification Agreement to protect his existing and ongoing client, NYMP. This somehow puts him in conflict of interest position with the positions of the Defendants in this action.

It is further argued that Stern's continuing participation in administration of a hold-back payout provision of the 2016 Asset Purchase Agreement also puts him and the Kirchenbaum Firm in a position of conflict that prohibits ongoing representation of the Defendants herein. Plaintiff contends that Stern's participation in the administration of this provision – a transaction that is ongoing, but will shortly expire – is likely to result in a dispute over whether General is entitled to indemnification from the seller of the NYMP assets. DE 17 at 8-9. As Plaintiff and

6

Stern still regularly communicate regarding the holdback provision, Plaintiff is concerned Stern will use the negotiations as leverage in this matter. DE 17 at 10.

B. Defendants' Position

Defendants characterize Plaintiff's motion as "an exercise in misdirection." DE 19 at 2. First, Defendants characterize Stern's "of counsel" relationship with the Kirschenbaum Firm as insufficient to require that his conduct be imputed to the firm so as to even consider disqualification. Id. at 2, 4. Even assuming such imputation, Defendants argue that no disqualifying conflict exists. In particular, Defendants deny that Stern will be called as a witness in this matter and argue that no disqualifying conflict exists. Id. at 5.

DISCUSSION

I. Legal Principles

A. Standard for Disqualification of Counsel

The question of whether to grant a motion to disqualify counsel is left to the sound discretion of the District Court. Finkel v. Frattarelli Bros., 740 F. Supp. 2d 368, 372 (E.D.N.Y. 2010) (quoting Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)). Because disqualification interferes with a person's ability to freely select counsel of his choosing, courts within the Second Circuit look upon disqualification motions with disfavor. BT Holdings, LLC v. Village of Chester, 2015 WL 8968360, * 3 (S.D.N.Y. 2015); Bennett Silvershein Associates v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991). Indeed, the Second Circuit has articulated that a "high standard of proof" is required on motions to disqualify because, "among other things, they are 'often interposed for tactical reasons, and that even when made in the best faith, such motions inevitably cause delay.' " Intellipayment, LLC. v. Trimarco, 2016 WL 1239261, at *4 (E.D.N.Y. 2016) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. 1983)).

7

However, when making a determination as to disqualification, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975) (citation omitted).

The high standard of proof required by the Second Circuit mandates that disqualification be granted only where continued representation would pose a "significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) (citation omitted); Intellipayment, 2016 WL 1239261, *4; BT Holdings, 2015 WL 8968360, *3. An attorney's conduct will likely "taint the underlying trial" in situations: "(1) where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." Giambrone v. Meritplan Ins. Co., 117 F. Supp. 3d 259, 268 (E.D.N.Y. 2015) (quoting HLP Properties, LLC v. Consol. Editson Co. of N.Y., 2014 WL 5285926, at *3 (S.D.N.Y. 2014) (internal quotation marks omitted)).

When addressing motions for disqualification, courts "look to the local rules of professional conduct for guidance." Akagi v. Turin Hous. Dev. Fund Co., 2017 WL 1076345, at *10 (S.D.N.Y. 2017) (quoting AVRA Surgical, Inc. v. Dualis MedTech GmbH, 2014 WL 2198598, at *2 (S.D.N.Y. 2014)). Such rules, however, "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).

  B. <u>Imputing the Conflicts of an "Of Counsel" Attorney</u>

The conflicts of an individual attorney may be imputed to a firm with which he or she is associated so as to disqualify the entire firm. Such disqualification rests on the presumption that

"'associated' attorneys share client confidences." <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, 409 F.3d 127, 133 (2d Cir. 2005). However, in situations where an attorney shares only limited connections with a firm, such as attorneys often referred to as "of counsel," a court may find that the attorney and the firm are not "associated" for purposes of conflict imputation. <u>Id</u>. Courts deciding whether to impute an "of counsel" attorney's conflict to an entire firm look to "the substance of the relationship" between the attorney and the firm. <u>Hempstead Video</u>, 409 F.3d at 135. "The closer and broader the affiliation of an 'of counsel' attorney with the firm, and the greater the likelihood that operating procedures adopted may permit one to become privy, whether intentionally or unintentionally, to the pertinent client confidences of the other, the more appropriate will be a rebuttable imputation of the conflict of one to the other. Conversely, the more narrowly limited the relationship between the 'of counsel' attorney and the firm, and the more secure and effective the isolation of nonshared matters, the less appropriate imputation will be." <u>Id</u>. As the foregoing makes clear, the issue of whether or not an "of counsel" attorney's conflicts are to be imputed to a firm presents a question of fact to be applied on a case-by-case basis.

II. <u>The Motion is Denied</u>

 A. <u>Imputation</u>

As discussed above, the issue of whether or not the conflicts of an attorney designated as of counsel to a law firm are imputed to that firm represents a question of fact. The parties have submitted evidence in support of their positions as to whether or not Stern's conflicts, if any, are properly imputed to the Kirschenbaum Firm.

Plaintiff relies, in part, on attorney's Stern professional biography as set forth on the Kirschenbaum Firm website. That website describes Stern as an attorney who is a part of the

9

firm's "alarm transactional department." DE 20-1. The website includes a description of Stern's professional background, and lists an email address "at" the Kirschenbaum Firm. Stern is described, inter alia, as having broad experience in transactional matters involving "the acquisition and sale of electronic and physical security service companies." Id. Plaintiff avers also (and Stern agrees) that Stern sends monthly billing to the Kirschenbaum Firm, is covered under that firm's professional liability insurance, and that Kirschenbaum associates are occasionally enlisted to assist Stern with legal research. See DE 18-1 at ¶¶ 8-9.

Stern has submitted an affidavit arguing against the finding of a relationship close enough to allow imputation of any conflict. DE 18-1. In his affidavit, Stern states that he works solely out of his Connecticut residence, has his own clients (that are not clients of the Kirschenbaum Firm) and that, over the past two years, he has visited the offices of that firm on only one occasion, for a period of approximately one hour. DE 18-1 at ¶ 6. He states that the Kirschenbaum Firm and he share neither hard nor soft copies of client files, and that neither has access to the others' computer network. Despite the listing of a firm email address, Stern states that he has no access to the Kirschenbaum Firm's email system. Id. at ¶ 7.

A review of the parties' submissions reveals, at the very least, a question of fact as to whether any conflict of Stern must be imputed to the Kirschenbaum Firm. The Court holds, however, that a decision as to imputation is not necessary to reach in this matter. This is because even assuming (for the purpose of this motion only) such imputation, no conflict requiring disqualification exists.

    B.    <u>There is No Conflict Requiring Disqualification</u>

Plaintiff seeks disqualification based upon the arguments that Stern will be a witness in this litigation, and that there is otherwise a conflict between his prior representation of non-party

NYMP and his representation of Defendants herein. Neither argument requires that the motion be granted.

    i.    <u>Witness/Advocate Argument</u>

In light of the fact that state rules of professional conduct provide guidance to Federal Courts deciding motions to disqualify, this Court turns to discuss the witness-advocate rule set forth in Rule 3.7 of the New York Rules of Professional Conduct. Subsection (a) of that rule speaks to circumstances in which the lawyer advocating at trial is to be a witness. Subsection (b) is addressed to those circumstances present where, as here, an entire firm is sought to be disqualified based upon the alleged necessity of the lawyer's testimony at trial. <u>See</u> NY ST RPC Rule 3.7 (McKinney). In such cases, the party seeking disqualification must show "by clear and convincing evidence" that the lawyer will provide testimony prejudicial to the client, and that the "integrity of the judicial system will suffer as a result." <u>Finkel</u>, 740 F. Supp. 2d at 373-74 (quoting <u>Murray v. Met. Life Ins. Co.</u>, 583 F.3d 173, 178-79 (2d Cir. 2009)). Further, "as under subsection (a), the moving party must demonstrate that the lawyer-witness is "likely to be called" to testify on a "significant issue." <u>Id</u>. This means that the testimony of the lawyer sought to be disqualified must be "necessary." <u>Ross v. Blitzer</u>, 2009 WL 4907062, at *2 (S.D.N.Y. 2009) (internal quotation marks omitted) (denying motion to disqualify law firm as premature because movant had not yet demonstrated that counsel's testimony would be necessary or prejudicial).

Here, Plaintiff asserts that Stern is a witness concerning:

- his knowledge of Wahrsager's anticipated interference with Plaintiff's business and Wahrsager's past misconduct,
- negotiations for plaintiff's purchase of the accounts at issue,
- the circumstances surrounding drafting of the Indemnification Agreement;

- interpretation of the Indemnification Agreement. DE 17 at 12.

Despite Plaintiff's assertion that General intends to call Stern as a witness, it fails to show why this extrinsic testimony regarding Wahrsager's admittedly well-known behavior, and Stern's negotiation and drafting of the Indemnification Agreement would be necessary in this action, which is addressed to the alleged misuse of business information by a number of defendants. See, e. g., Fox v. Idea Sphere, 2013 WL 1191743, at *26 (S.D.N.Y. 2013) (noting that a law firm is not automatically disqualified because it assisted in drafting an agreement which is now under litigation); see also BT Holdings, 2015 WL 8968360, at *6. Plaintiff has not shown that such testimony would likely cause substantial prejudice, or that the judicial system will suffer as a result. See BT Holdings, 2015 WL 8968360, at *7 (noting that although an attorney's testimony regarding the underlying settlement agreement may be detrimental, plaintiff failed to demonstrate the testimony was "sufficiently adverse" to warrant disqualification of an entire firm). Accordingly, the Kirschenbaum Firm need not be disqualified on the ground that Stern will be a witness in this case.

    ii.    <u>Conflict of Interest Argument</u>

In addition to failing to demonstrate that the witness-advocate rule applies, Plaintiff fails to show how any conflict arising out of Stern's prior representation of non-party NYMP would taint these proceedings so as to require disqualification. Plaintiff's claim of conflict arises from Stern's prior representation of NYMP, and the notion that Stern somehow obtained confidential information regarding Wahrsager's past and possible future conduct in connection with the sale of the NYMP assets to General. It is worth repeating that there is no claim here that Stern was ever in an attorney-client relationship with General. There is similarly no question but that each attorney involved in the 2016 Asset Purchase Agreement represented his own client's interests,

and not the interests of the other party to that transaction. Nor was Stern otherwise in any position to obtain client confidences from General. Instead, any information communicated by General to Stern about Wahrsager's past behavior was conveyed to Stern in his capacity as the lawyer for the Seller in that transaction, and not in any capacity as a lawyer for General – his adversary in that negotiation. While Stern may have been told about General's concerns as to Wahrsager, that communication would constitute hearsay evidence of little or no probative value in this case. Moreover, such information would not include any confidential information known only to General. General's counsel certainly would not have imparted such information to its adversary in the context of transactional negotiations. Perhaps more importantly, as recognized by Defendants, Wahrsager's past conduct was "well known within the security alarm industry." DE at 17 at 8. This well-known conduct prompted General to ask Stern's client for the Indemnification Agreement as a condition of the purchase of the NYMP assets that it was purchasing. As the drafter of that agreement, Stern knew nothing more than General's "well-known" concerns about Warhsager; he was not made privy to facts known outside of the industry, much less General's confidential client information.

Plaintiff makes much of the possibility that General may, at some later point in time, invoke the hold harmless provision of the Indemnification Agreement and that Stern's argument (to be advanced on behalf of NYMP in some future litigation) in favor of a narrow interpretation thereof places him in a conflict of interest with Defendants. That possibility does not place Stern in a position of conflict with his clients in this litigation. Not only is that agreement not at issue here, any action undertaken pursuant to that agreement could not ripen until there is something for the seller of the NYMP assets to hold General harmless for. The contours of this action, which allege unlawful action by Commercial, Wahrsager, Moran and as-yet unidentified John

13

Doe salesman, are likely far broader than those that might be argued to implicate conduct contemplated by the Indemnification Agreement. At the current vantage point, it simply cannot be said whether or not the terms of that agreement will ever come into play. In any event, as noted, the terms thereof are likely to be deemed irrelevant to the trial of this action which will adjudicate whether any of the named Defendants herein engaged in unfair business practices under Federal and State statutory and common law.

Plaintiff's additional argument that it has reason to believe Stern will now use the holdback provision as leverage against Plaintiff is vague. The holdback provision is due to expire toward the end of this year, and Plaintiff has not explained how it believes Stern will use this holdback provision as leverage.

In sum, Plaintiff has not articulated an existing conflict that prohibits Stern from represented Wahrsager and/or the all Defendants herein. See BT Holdings, LLC v. Vill. of Chester, 2015 WL 8968360, at *4 (S.D.N.Y. 2015) (noting that attorney disqualification may be appropriate in the absence of a formal attorney-client relationship if the attorney was privy to confidential information and there was a reasonable basis for believing that such information would be kept confidential). The Court therefore holds that the Kirshenbaum Firm's continued representation of Defendants would not taint the underlying trial regardless of that firm's relationship with Stern. Plaintiff has not met the high standard required to succeed on a motion for disqualification and the motion is therefore denied.

## Conclusion

Based on the foregoing, the Plaintiff's motion to disqualify the Kirshenbaum Law Firm, herein Docket No. 15, is denied.

Dated: Central Islip, New York
September 15, 2017

    /s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge