UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────── X
GENERAL SECURITY, INC.,

        **MEMORANDUM & ORDER**
    Plaintiff,    17-CV-1194 (DRH) (AYS)

 -against-

COMMERCIAL FIRE & SECURITY, INC.,
WAYNE WAHRSAGER, STEVEN MORAN
and JOHN DOES 1-10,

    Defendants.
──────────────────────────────── X

**APPEARANCES:**

**SOKOLOFF STERN LLP**
Attorneys for Plaintiff
179 Westbury Avenue
Carle Place NY 11514
By Adam I. Kleinberg, Esq.

**KIRSCHENBAUM & KIRSCHENBAUM, P.C.**
Attorneys for Defendants
200 Garden City Plaza, Suite 315
Garden City, New York 11530
By Kieran X. Bastible, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff General Security, Inc. ("Plaintiff" or "General") commenced this action against Defendants Commercial Fire & Security, Inc. ("Commercial"), Wayne Wahrsager ("Wahrsager"), Steven Moran ("Moran"), and John Does 1-10 (collectively, "Defendants") asserting claims under the Defend Trade Secrets Act, 18 U.S.C. §1836, and the Lanham Act, 15

1

U.S.C. §1125(a), as well as pendant state law claims. Before the Court is Defendants' motion to dismiss Plaintiff's federal law claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to a claim for which relief can be granted. For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

### I. The Amended Complaint

The following allegations are taken from the Amended Complaint ("AC") and presumed true for the purposes of this motion.

#### A. The Parties

General and Commercial are both security system installation, servicing, and monitoring companies with residential and commercial clients. (AC ¶¶ 1, 10.) As of November 2010, Wahrsager was an owner and chief operating officer of New York Merchants Protective Co. ("NYMP"). (*Id.* ¶ 33.) NYMP was in the business of providing central station monitoring and/or similar equipment to residential and commercial customers. (AC Ex. A ¶ 6.) In January of 2011, Bank of America brought an action against NYMP to recover under a promissory note and loan agreement with NYMP and to obtain the appointment of a receiver to take over management of NYMP. (AC ¶¶ 39-40.) Upon the conclusion of that action, the court appointed a receiver. (*Id.* ¶ 41.) The court upheld the receiver's decision to terminate Wahrsager from employment with NYMP. (*Id.* ¶ 43.) Wahrsager was required to vacate the premises and turn over his keys and access card to NYMP's office. (*Id.* ¶ 43.) Following his termination, Wahrsager maintained no rights in NYMP's accounts or customer lists. (*Id.* ¶ 47.) Moran is a former employee of General that now works as a salesperson for Commercial. (*Id.* ¶¶ 16-17.)

B.      **Facts Relevant to Plaintiff's Defend Trade Secrets Act Claim**

   1.      **The Asset Purchase Agreement**

In November 2016, Plaintiff entered into an asset purchase agreement with NYMP's successor to purchase numerous customer accounts and contracts, as well as the exclusive right to use the trade name "New York Merchants Protective Company." (*Id*. ¶¶ 28-29.) Following the asset purchase agreement, a number of customers, all of whom were under contract with Plaintiff following the asset purchase agreement, cancelled their contracts with Plaintiff. (*Id*. ¶ 48.)

   2.      **Wahrsager's Contact with Plaintiff's Customers**

In November 2016, a customer identified as "R.A." advised Plaintiff that she was no longer under contract with Plaintiff and that she had a new security company. (*Id*. ¶ 55.) According to "R.A.", Wahrsager had told her that he would "take care of everything" regarding her existing contract with Plaintiff. (*Id*. ¶ 56.) Customer "I.A.T." advised Plaintiff that a man named Wayne had come to their office to solicit business and claimed that Commercial had previously serviced the "I.A.T." account. (*Id*. ¶ 85.) In February 2017, customer "R.B." contacted Plaintiff to cancel her contract with Plaintiff. (*Id*. ¶ 90.) "R.B." advised Plaintiff that the "old company" contacted her and offered her a better price (*Id*. ¶¶ 90-91.)

   3.      **Moran's Contact with Plaintiff's Customers**

Customer "G.C." was contacted by Defendant Moran. (*Id*. ¶¶ 59-61.) Moran told "G.C." that she no longer had a contract with Plaintiff and convinced her to sign a contract with Commercial. (*Id*. ¶¶ 69-70.) During this conversation, Moran held a clipboard that contained a list of customer names, addresses and phone numbers. (*Id*. ¶ 67.) Moran also possessed information regarding the "G.C." account with NYMP. (*Id*. ¶ 67.) Moran contacted Plaintiff's customer "A.D." to solicit their business. (*Id*. ¶ 125.) During his communications with "A.D.,"

3

Moran also had all of "A.D.'s" account information in his possession. (*Id.* ¶ 127.) Another customer, "H.H.," was contacted by Moran and told that Commercial would buy out its contract with Plaintiff. (*Id.* ¶ 104.) Moran told "H.H." that he had a list of NYMP accounts. (*Id.* ¶ 103.) Moran told another of Plaintiff's customers, "L.D.", that his company would buy out its current contract, which led "L.D." to sign a contract with Commercial. (*Id.* ¶¶ 134-135.)

Customers "E.M.S", "MLS" and "B.E.D.C." also terminated their contracts with Plaintiff in order to sign with Commercial based on similar solicitations by the Defendants. (*Id.* ¶¶ 97, 111, 118.) Moran knew all of "B.E.D.C.'s" confidential account information at the time he solicited its business. (*Id.* ¶ 121.) This customer, like many of the others, was solicited without having first contacted Commercial or anyone else about switching security companies. (*Id.* ¶¶ 64, 102, 119, 125, 133.)

4. **The Confidential Nature of Plaintiff's Customer List**

Plaintiff's customer records, which include contact information, sales history and pricing information, are confidential and not available to the public. (*Id.* ¶¶ 150-152.) Plaintiff maintains customer information on a secure computer accessible only to employees, who are required to use a username and password to access the information. (*Id.* ¶ 152.) This customer information derives independent economic value from not being generally known to competitors. (*Id.* ¶ 159.) Furthermore, Plaintiff did not consent to the Defendants' use of their customer records. (*Id.* ¶ 155.) Defendants are alleged to have maintained records of NYMP's accounts and to have used them to improperly solicit Plaintiff's customers. (*Id.* ¶ 144.) Moran, as a former employee of Plaintiff, knew or had reason to know that Plaintiff's customer information is confidential. (*Id.* ¶ 156.) Similarly, Wahrsager, as the former owner of NYMP, knew or had reason to know the confidential nature of the customer list. (*Id.* ¶ 157.)

**C.     Additional Facts Relevant to Plaintiff's Lanham Act Claim**

In addition to the above allegations, the following are relevant to the Lanham Act claim.

During his communications with customer "G.C.," Moran told her that NYMP had gone out of business and that Commercial had taken over its accounts. (*Id.* ¶ 63.) Moran also told "G.C." that NYMP had merged with General. (*Id.* ¶ 62.) After she signed a contract with Defendant, Moran gave "G.C." two "United States Merchants Protective Co." lawn signs and to display at her home. (*Id.* ¶ 75.) Customer "I.A.T." advised Plaintiff that Wahrsager indicated that Commercial had previously serviced the "I.A.T." account. (*Id.* ¶ 85.) Similarly, "R.B." advised Plaintiff that they were cancelling their contract in order to receive alarm services from "the old company." (*Id.* ¶ 90.) In his conversations with customer "MLS," Moran referred to himself as the owner of NYMP and persuaded MLS to cancel its contract with Plaintiff. (*Id.* ¶¶ 112-113.) Moran also claimed to be a representative of NYMP when he called "A.D." in order to solicit her business on behalf of Commercial. (*Id.* ¶126.) Moran told "A.D." that he was contacting the company's "original customers" in order to "get them back." (*Id.* ¶ 126.)

In his attempts to solicit her business, Moran told customer "G.C." that General was a "bad company" that had attempted to steal NYMP accounts. (*Id.* ¶ 62.) Moran also informed "G.C." that she no longer had a contract with NYMP. (*Id.* ¶ 69.) Moran similarly told "H.H" that it was not under contract with NYMP and was free to sign a new contract with Commercial. (*Id.* ¶ 104.) Defendants told "B.E.D.C." that some of NYMP's accounts were "gone" and that B.E.D.C. was no longer an NYMP account. (*Id.* ¶ 120.) In his conversations with "A.D.," Moran falsely stated that General does not handle residential accounts, but rather only commercial accounts. (*Id.* ¶ 128.) Defendants continue to make false and misleading statements about

General to General's customers; the above listed customer interactions are provided as an illustration rather than an exhaustive list. (*Id.* ¶¶ 138, 142.)

## DISCUSSION

I. **Standard of Review**

    A. **Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks

for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); see *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell*, Inc., 945 F.2d 40, 44 (2d Cir. 1991)); see *Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint").

**II.     The Defend Trade Secrets Act Claim**

    **A.     Relevant Law**

Plaintiff brings a claim for misappropriation of its trade secrets under the federal Defend Trade Secrets Act ("DTSA"). The DTSA provides a civil remedy to "an owner of a trade secret that is misappropriated . . . ." 18 U.S.C. 1836(b)(1). To state a claim under the DTSA, a plaintiff must allege, "an unconsented disclosure or use of a trade secret by one who (i) used improper

means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, 2017 WL 6459464, at *6 (E.D.N.Y. Dec. 15, 2017) (quoting *Free Country Ltd. v. Drennan*, 235 F. Supp. 3d. 559, 565 (S.D.N.Y. 2016)).

The DTSA defines trade secrets as any business information that, "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. §1839(3)(A)–(B).

**B. Plaintiff Has Stated a Claim for Trade Secret Misappropriation**

Defendants argue that Plaintiff has failed to offer sufficient facts to support its claim that Defendants acquired or currently possess any of Plaintiff's trade secrets. Specifically, Defendants argue that there are no allegations as to how Wahrsager or Moran acquired the trade secrets at issue or whether either Defendant was subject to a confidentiality agreement. Furthermore, they argue that any records that Wahrsager retained from his time as an officer of NYMP are over six years old and therefore cannot support a claim of trade secret misappropriation.

Beginning with the latter argument, Defendant's reading of the complaint fails to acknowledge the Amended Complaint in its entirety. Although Wahrsager last had access to NYMP's records six years ago, Plaintiff alleges that its servicing contracts, including those at issue here, typically last for a term of several years and automatically renew upon expiration. (A.C. ¶¶ 51, 59, 81, 87, 94, 108, 115, 123, 130.) Thus, the fact that Wahrsager last had access to

8

the information six years ago is not necessarily fatal. Moreover, it is alleged that Moran previously worked for General and that ". . . defendants maintained records of New York Merchants Protective Company accounts . . . ." (*Id.* ¶¶ 16, 144.) A fair reading of the complaint leads to the reasonable inference that Moran accessed records while working at General and shared those records with Commercial and Wahrsager. "[T]here is no heightened pleading requirement on actions brought under the DTSA." *Telsa Wall Sys. v. Related Companies*, *L.P.*, 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 15, 2017). Plaintiff need not allege exactly how either of the Defendants acquired the trade secrets at issue. *See Oneida*, 2017 WL 6459464, at *6 (finding the complaint sufficient to state a claim where plaintiff alleged that defendants had access to the confidential information). Plaintiff's allegations setting forth the various customers of General that Defendants are contacting and soliciting, that the customers reported that Defendants had the customer's account information and that Defendants prior employment provided access to this confidential information provide support for the inference that Defendants have misappropriated Plaintiff's trade secrets. *See Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 412 (E.D.N.Y. 2012) (finding that allegations that plaintiff was losing customers were sufficient to imply that defendant was improperly enrolling those customers).

Furthermore, both Wahrsager and Moran have a duty to maintain secrecy as former employees of NYMP and General. Generally, there is an implied duty in every employment contract not to use trade secrets during employment at a competing company. *North Atl. Instruments v. Haber*, 188 F. 3d. 38, 48 (2d Cir. 1999). Wahrsager, as a former officer of NYMP, had a further duty to maintain secrecy through his fiduciary relationship with the company. *Cf. Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 301 (E.D.N.Y. 2012) (finding the complaint

sufficiently alleged a breach of the duty of confidentiality in support of a state law claim for misappropriation of trade secrets where defendant was alleged to have maintained records while an officer of plaintiff's company). Plaintiff also alleges that both individual defendants knew or had reason to know of the confidential nature of the customer information. (A.C. ¶¶ 156-157.) As a result, a ". . . duty to maintain secrecy . . ." is sufficiently alleged as required under the DTSA. 18 U.S.C. 1839(5)(B)(ii)(II).

### C. Customer Lists Can Constitute Trade Secrets

Defendants also argue that Plaintiff's customer information is not a fact a trade secret subject to protection under the DTSA. Specifically, Defendants argue that customer lists are not per se confidential and that Wahrsager and Moran should not be precluded from soliciting clients with whom they had pre-existing relationships or from using information retained via their casual memory.

To support this proposition, Defendants cite a series of cases concerning non-compete clauses in employment contracts and the relationship between professionals and their clients as they travel from firm to firm. *See, e.g., Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 296 (E.D.N.Y. 2013); *Nebraskaland, Inc. v. Brody*, 2010 WL 157496, at *3 (S.D.N.Y. Jan. 13, 2010); *Good Energy, L.P. v. Kosachuk*, 49 A.D. 3d 331, 332, 853 N.Y.S. 2d 75 (1st Dep't 2008). Here, however, the client information allegedly misappropriated is of a different nature. Plaintiff identifies individual customers that were contacted and solicited by Defendants, none of whom had contacted Defendants to seek out their services. In addition, Plaintiff alleged that Moran was in possession of specific information regarding these customers' accounts with NYMP (A.C. ¶¶ 67, 121, 127.) The Second Circuit has found customer lists to qualify as trade secrets "[where] it would be difficult to duplicate a customer list because it reflected individual customer

preferences . . . ." *Haber*, 188 F. 3d. at 46. Plaintiff has described the trade secrets at issue in this case - the customer contact and pricing information - with sufficient specificity. *See Telsa*, 2017 WL 6507110, at *9 (finding complaint was sufficient as it alleged specific categories of trade secrets that were misappropriated).

In addition, the fact that the information contained in the trade secrets at issue can be obtained through proper means or retained via casual memory does not preclude a finding that the information constitutes a trade secret. *See Haber*, 188 F. 3d. at 46; *see also Paz Sys., Inc. v. Dakota Grp. Corp.*, 514 F. Supp. 2d. 402, 408 (S.D.N.Y. 2007). The secrecy of information is generally a question of fact not to be resolved at the pleadings stage. *See Oneida*, 2017 WL 6459464, at *7; *see also Medtech Products v. Ryanair, LLC*, 596 F. Supp. 2d. 778, 805 (S.D.N.Y. 2008). Plaintiff described the specific steps it took to keep the customer information secret. (A.C. ¶¶ 150-152.) It also alleged, as is required under the statutory definition of trade secrets, that the customer information "derives independent economic value . . . from not being generally known . . . ." 18 U.S.C. §1839(3)(B); *see Elsevier, Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018).

For purposes of pleading a plausible claim, the confidential nature of Plaintiff's customer information is sufficiently set forth.

The motion to dismiss Plaintiff's first cause of action for violation of the DTSA is denied.

### III.  The Lanham Act Claims

Section 43(a) of the Lanham Act creates two separate causes of action: (1) false designation of origin claims, and (2) false advertising claims. 15 U.S.C. §1125(a); *see Lexmark*

*Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014). In the present case, Plaintiff brings a claim under both legal theories.

### A. Plaintiff Has Stated a False Designation of Origin Claim

The first prong of Section 43(a) of the Lanham Act prohibits any misrepresentation likely to cause confusion about the source of a product, in particular the use by any person of "any work, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association . . . with another person, or as to the origin, sponsorship, or approval or his or her goods, services, or commercial activities by another person." *L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013) (quoting 15 U.S.C. §1125(a)(1)(A)). "A party establishes liability under [the Act] if it can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion." *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011).

Here, Defendants assume that Plaintiff's trade name "New York Merchants Protective Company" is a mark entitled to protection under the Lanham Act. The sum and substance of Defendant's argument is as follows: "Plaintiff has not shown that Defendants used that mark in commerce in connection with the sale of their own alarm services. Nowhere . . . is it alleged that Defendants represented themselves as being presently affiliated with either General or its 'New York Merchants' trademark and/or trade name." Def.'s Mem. in Supp. (ECF No. 28) at 8.

However, the Lanham Acts defines "use in commerce" as use of a mark "on services when used or displayed in the sale or advertising of services." 15 U.S.C. §1127. Here, Plaintiff

alleges two instances where Moran held himself out as an agent of NYMP in an attempt to advertise and sell alarm contracts for Commercial. (A.C. ¶¶ 112, 126.) Moran also gave one of Plaintiff's customers lawn signs bearing the name "Merchants Protective Co." (*Id.* ¶ 75.) The foregoing are sufficient to support the inference that defendants used "Merchants Protective Company" in the course of their attempts to sell alarm services to prospective clients.

In addition, Defendants' argument fails to acknowledge the entire text of Section 43(a). In addition to prohibiting improper uses of a trade name or mark, the Lanham Act prohibits the use in commerce of any "false designation of origin, false or *misleading description of fact*, or false or *misleading representation of fact* . . . likely to cause confusion . . . as to the origin . . . of his or her goods [or] service . . . ." 15 U.S.C. 1125(a)(1) (emphasis added). Here, Plaintiff has pled that Defendants have made misrepresentations likely to confuse consumers as to the origin of Defendants' services. (A.C. ¶ 174.) As noted above, Moran misrepresented that he was an owner or agent of NYMP. (*Id.* ¶¶ 112, 126.) Defendants also made misleading statements regarding the ownership of several of Plaintiff's customers' accounts; Defendants told several customers that Commercial had previously owned or serviced their accounts. (*Id.* ¶¶ 85, 90, 126.)

Furthermore, at the motion to dismiss phase, "the hurdle for Plaintiff's claims regarding likelihood of confusion is exceedingly low." *Scotch & Soda B.V. v. Scotch and Iron LLC*, 2018 WL 2224997, at *3 (S.D.N.Y. May 15, 2018). The factual allegations must merely permit a reasonable factfinder to find that a likelihood of consumer confusion exists. *Id.* at *4. Defendants' statements to Plaintiff's customers regarding the ownership of their accounts could plausibly confuse consumers about the relationship between General, NYMP and Commercial. Therefore, Plaintiff has sufficiently pled that Defendants' actions are "likely to cause confusion as to the origin of . . . [Defendants'] goods [or] services . . . ." 15 U.S.C. §1125(a)(1)(A).

The motion to dismiss Plaintiff's second cause of action for violation of the Lanham Act under a false designation theory is denied.

### B. Plaintiff Has Stated a False Advertising Claim

The second prong of Section §43(a) prohibits any false or misleading misrepresentation, "which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B). Claims for false advertising must allege: "(1) a false or misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, and (5) damaged or will likely damage the plaintiff." *Sussman-Automatic Corp.*, 15 F. Supp. 3d 258, 269 (E.D.N.Y. 2014) (quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013).

In the Second Circuit, in order for a statement to constitute "commercial advertising or promotion" it "must be: (1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Gmurzynska v. Hutton*, 355 F. 3d 206, 210 (2d Cir. 2004) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F. 3d 48, 57 (2d Cir. 2002) (internal quotation marks omitted). "[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F. 3d at 57.

Defendants argue that the alleged statements to ten customers are "simply too limited to be deemed advertising or promotion, and thus actionable under the Lanham Act." Defs.' Mem. in

Supp. (ECF No. 28) at 9. To support this proposition, Defendants rely solely on *Fashion Boutique of Short Hills v. Fendi USA*, the Second Circuit decision defining "commercial advertising or promotion" for the purposes of the Lanham Act. 314 F. 3d at 57. Defendants argue that Plaintiff's claim must be insufficient based on the court's holding in *Fashion Boutique*; the court found that twenty-seven isolated statements were insufficient to constitute "an organized campaign to penetrate the relevant market." 314 F. 3d at 58.

Defendants' reliance on *Fashion Boutique* is misplaced. *Id.* A series of isolated statements to individual customers is not per se inactionable under the Lanham Act. *See Apotex, Inc. v. Accordance Therapeutics, Inc.*, 2014 WL 5462547, at *5 (S.D.N.Y. Oct. 23, 2014) (reading *Fashion Boutique* to hold not that the number of statements made is dispositive, but rather that the statements must be part of an organized campaign to penetrate the market). Furthermore, *Fashion Boutique* was decided at the summary judgment stage, rather than on a motion to dismiss. 314 F. 3d at 52; *see also Sussman-Automatic*, 15 F. Supp. 3d at 272. The *Fashion Boutique* court concluded that there was "no evidence to suggest that the . . . statements were part of an organized campaign to penetrate the marketplace." 314 F. 3d at 58. However, at the pleadings stage, the question is only whether the allegations in the complaint make it plausible that Defendants' actions were part of an organized campaign to penetrate the market. *See Mimedx Group, Inc. v. Osiris Therapeutics, Inc.*, 2017 WL 3129799, at *8 (S.D.N.Y. July 21, 2017) (holding that distribution of a brochure containing false statements to individuals customers could plausibly be part of an organized campaign).

Plaintiff has alleged that Defendants took affirmative steps to contact several of Plaintiff's customers, the true number of which exceed those specifically named in the complaint. (A.C. ¶ 138.) Plaintiff has also alleged that Moran made use of a list of Plaintiff's

customers and was contacting a series of Plaintiff's customers to "get them back." (*Id.* ¶¶ 62, 67.) NYMP customers have reported receiving calls from individuals stating that NYMP had gone out of business and Plaintiff alleges that Defendants' made these calls. (*Id.* ¶ 137.) Defendants' repeated use of false statements in their interactions with multiple NYMP customers suggests a systematic effort to solicit Plaintiff's customers. *See Mimedx*, 2017 WL 3129799, at *8 (finding allegations that defendants had and were continuing to distribute a misleading brochure to prospective customers were sufficient to state a false advertising claim).

The motion to dismiss Plaintiff's second cause of action for violation of the Lanham Act under a false advertising theory is denied.

## CONCLUSION

For the reasons set forth above, the motion to dismiss Plaintiff's federal law claims is denied. Given the denial of that motion, Defendant's request that the Court decline to exercise supplemental jurisdiction over the state law claims is also denied.

**SO ORDERED.**

Dated: Central Islip, New York                  __s/_____
      June 25, 2018                                        Denis R. Hurley
                                                                           United States District Judge